UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERTO J. SCHARON,

        Plaintiff,

    v.                                Case No. 21-C-895

STATE OF WISCONSIN, et al.,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Roberto J. Scharon, who is currently serving a state prison sentence at Racine Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that the defendants violated his civil rights. This matter comes before the Court on Scharon's motion for leave to proceed without prepaying the full filing fee, motion to waive the initial partial filing fee, and to screen the complaint. Dkt. Nos. 1-2 & 7.

### MOTIONS REGARDING PAYMENT OF THE CIVIL CASE FILING FEE

Scharon requested leave to proceed without prepayment of the full filing fee (*in forma pauperis*). Dkt. No. 2. A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Scharon has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2), and has been assessed an initial partial filing fee of $37.00. *See* Dkt. Nos. 3 & 5. On August 16, 2021, Scharon filed a motion to waive the initial partial filing fee. Dkt. No. 7. The Court has reviewed Scharon's trust account statement and concludes that Scharon lacks the funds to pay the initial partial filing fee.

Therefore, the Court will grant the motion to waive the initial partial filing fee and will also grant the motion for leave to proceed without prepayment of the filing fee.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, Plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content

2

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Scharon's lawsuit arises out of his arrest at his home on October 26, 2019. Dkt. No. 1. He names as defendants: the State of Wisconsin; Milwaukee County; fifteen police officers from the City of Cudahy Police Department (Thomas Livesey, Sean Harrington, Thomas Kopdlowski, Craig Bultman, Bradley Summers, Brian Ploch, Ryan Wallis, Adam Frick, Adam Wege, Holly Bhirdo, Michael Merrucci, Jeffery Bloor, Aaron Bixby, Andrew Kitzrow, and Janelle Luzinski); "K-9 Rex" from the City of Cudahy Police Department; six police officers from the St. Francis Police Department (Rodney Lucht, Michael Scott, Johnnie Mielcarek, Kyle Lerasch, Robert DiFrancesco, and Daniel Martinez); and five police officers from the South Milwaukee Police Department (Edward Hallett, Jon Rivamonte, Daniel Doering, Logan Staege, and Kadi Walusay). *Id*. at 1-2, 5.

On October 26, 2019, at around 11:15 a.m., Elizabeth Scharon (the plaintiff's wife) called 911 to report that Scharon refused to let her and their two minor children leave the house; that he had a gun; that he threatened to slash their car tires; and that she feared for the safety of herself and their children. *Id*. at 3. Though he did not tell the police at the time, Scharon now claims that he had refused to let them leave the home because Elizabeth Scharon planned to take the children "to her childhood home where she was sexually abused and her anxiety was not validated by her parents." *Id*. at 4. In any event, the dispatcher told Elizabeth Scharon to "do whatever she could to exit the residence immediately," so she grabbed her children and ran out of her house. *Id*. at 3.

3

Livesey and three other police officers (who are not named as defendants in this case) arrived at the house shortly thereafter. *Id*. The officers immediately set up a "perimeter" around the house, which caused Scharon to fear for his safety. *Id*. Scharon explains that his wife and children were no longer in the house and he was "unarmed," so he knew that the police officers did not have exigent circumstances to enter his home and arrest him. *Id*. According to Scharon, Livesey did not do any "investigation" about whether there was a domestic incident earlier that day and he simply believed his wife's "false statements" regarding his possession of a gun, his mental health, and his sobriety. *Id*. at 3-4.

Between 11:35 a.m. and 11:56 a.m., different individuals spoke to Scharon over the telephone and asked him to exit his house so he could be arrested. *Id*. at 4. Scharon admits that he refused. *Id*. Livesey then called the Emergency Medical Services (EMS) and the South Shore Joint Tactical Unit. *Id*. Scharon explains that the South Shore Joint Tactical Unit is similar to a "SWAT team" and consists of highly trained police officers from the City of Cudahy Police Department, the St. Francis Police Department, and the South Milwaukee Police Department. *Id*. at 4-5. The South Shore Joint Tactical Unit team arrived at the house at around 11:57 a.m. *Id*. at 4. About an hour later, at 12:40 p.m., a "Bearcat" arrived at the house. *Id*. at 5. Scharon explains that a "Bearcat" is a military-grade armored vehicle. *Id*.

Between 12:40 p.m. and 4:09 p.m., Livesey organized the police officers into "teams," i.e., Alpha team, Delta team, Sierra team, the Charlie perimeter, etc. *Id*. at 5-6. Every three minutes, someone would announce over a speakerphone, "Roberto, this is the Cudahy Police Department. You are under arrest. Come out with your hands up." *Id*. at 6. Fox News 6 arrived at some point and reported that Scharon was suicidal inside his home. *Id*. At around 3:40 p.m., Scharon's cellphone died, and he was no longer able to communicate with the police. *Id*. Scharon

4

then went to his basement to hide. *Id*. Scharon explains that he was extremely afraid at this point because Livesey had "overreacted" to the situation by requesting a military-grade armored vehicle and the SWAT team, and he believed that the police intended to kill him because the EMS had been called even though no one was injured on the scene. *Id*. At around 4:09 p.m., a Milwaukee County Circuit Court judge signed a "no-knock" warrant that authorized the police to enter the home without prior announcement and arrest Scharon. *Id*.

At 4:19 p.m., Livesey authorized the Alpha team and Delta team to enter the home to take Scharon into custody. *Id*. They deployed a "flash bang" and entered the home to take Sharon into custody. *Id*. Ten minutes later, at 4:28 p.m., the first floor was "cleared," and the police went to the basement to arrest Scharon. *Id*. Scharon then complied with the officers' orders to take him into custody. *Id*. Scharon was criminally charged with one count of failure to comply with an officer's attempt to take a person into custody and one count of disorderly conduct with a modifier for domestic abuse and use of a dangerous weapon. *Id*. at 7-8. Scharon states that he was "coerced into making a plea of guilty after ten months of being medicated." *Id*. at 8.

Elizabeth Scharon then moved to La Crosse, where a state court judge issued a "no-contact injunction" for 10 years in a state court civil case. *Id*. at 8-9. The injunction was later extended to apply to Scharon's children and Elizabeth Scharon's parents. *Id*. at 10. Elizabeth Scharon also filed for divorce in state court. *Id*. at 9-10. A state court judge then sentenced Scharon to seventeen months confinement and thirteen months extended supervision in his state court criminal case. *Id*. at 9. The judge also ordered Sharon to pay restitution in the amount of $348.33 for damage to the home caused by his refusal to comply with lawful police commands. *Id*. For relief, Scharon seeks monetary damages, and he asks for his state court family law, civil, and criminal cases to be "overturned" and "dismissed with prejudice." *Id*. at 11.

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

The Fourth Amendment guarantees the right of the people "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures" and provides that "no warrants shall issue but upon probable cause . . . ." U.S. Const. amend. IV. Probable cause is an absolute defense to a §1983 claim for wrongful arrest. S*ee Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014). A police officer has probable cause to arrest if, at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to permit a prudent person to believe that the suspect had committed, is committing, or is about to commit an offense. *Id.* "When an officer has received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth, . . . he has probable cause." *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) (internal quotation marks and citation omitted).

The Court will dismiss Scharon's Fourth Amendment claims for failure to state a claim upon which relief can be granted because the defendants clearly had probable cause to arrest Scharon and a warrant to enter his home on October 26, 2019. Scharon admits in his statement of facts that Elizabeth Scharon called 911 and reported that he would not allow her and their two minor children to leave their house because she was about to take them to her childhood home. Under Wisconsin law, holding a person against their will is a crime. *See* Wis. Stat. §940.30

6

("Whoever intentionally confines or restrains another without the person's consent and with knowledge that he or she has no lawful authority to do so is guilty of a Class H felony."). Where such a crime is committed by a person against his spouse, the existence of probable cause generally mandates arrest under Wisconsin's law concerning domestic abuse. Wis. Stat. §968.075(2). Although Scharon reiterates numerous times throughout the complaint that there was no "investigation" into whether there was a domestic incident that day, it is obvious that police were responding to Elizabeth's emergency call that provided not only probable cause to believe he was committing a crime of domestic violence but also suggested he had access to a firearm, thereby substantially increasing the risk of harm to all involved, including law enforcement. Scharon further admits that he refused to come outside and speak with the police because he was "worried that he might die." This only bolstered his wife's statements to the police regarding Scharon's mental health, sobriety, and possible possession of a gun. Even if Scharon had denied his wife's allegations, police were not required to accept his version. Police who make arrests for domestic violence are generally confronted with conflicting versions of the events. A suspect's denial, by itself, does not negate a finding of probable cause. But Scharon apparently refused to answer the door and even talk to police, leaving the police with no choice but to rely on his wife's version of events and take the steps needed to place him in custody.

Scharon further alleges that the defendants provided "false information" in order to induce a state court judge to sign a "no-knock" warrant. But that claim too is undercut by his own statements that he refused to come outside and talk to the police. In other words, Scharon's own actions prevented the defendants from conducting further investigation into the situation. Scharon cannot now claim that the police "knew" or "had reason to believe" that the information provided in the warrant was "false" when he did not give them any alternative explanations for what

7

happened when they tried to talk to him. In short, Scharon's own admissions about how he behaved that day clearly show that there is no room for a difference of opinion on whether there was probable cause to enter his home and arrest him. Therefore, Scharon fails to state a claim for unlawful arrest under the Fourth Amendment.

The Court notes that the defendants obtained a "no-knock" warrant authorizing them to enter the home and arrest Scharon *before* they actually entered the home and arrested him. This means that Scharon also has no Fourth Amendment claim regarding *entry* of his home without a warrant. There are no allegations to suggest the damage to the home was excessive under the circumstances, given Sharon's refusal to comply with the lawful commands of the officers and their reasonable belief that he might be armed.

The Court further notes that, even if he did state a Fourth Amendment claim, it would likely be *Heck* barred. A plaintiff cannot maintain a §1983 action where a judgment in his favor would necessarily imply the invalidity of a previous criminal conviction that has not been reversed, expunged, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-88 (1994). A §1983 civil-rights claim does not necessarily imply the invalidity of a conviction or sentence if (1) the conviction derives from a guilty plea rather than a jury verdict and (2) the plaintiff does not plead facts inconsistent with guilt. *See Brown v. Racine Cty.*, 775 F. App'x 256, 257 (7th Cir. 2019). But most of Scharon's factual allegations in the complaint are directly inconsistent with his guilty plea for one count of failure to comply with an officer's attempt to take a person into custody and one count of disorderly conduct with a modifier for domestic abuse and use of a dangerous weapon. For example, Scharon reiterates numerous times that he never had a gun during the October 26, 2019 incident. He also reiterates numerous times there was no domestic violence that day. Yet he

also pled guilty to disorderly conduct as a domestic violence offense and use of a dangerous weapon. Sharon's claims that police unlawfully entered his home and arrested him are directly contrary to his crimes to which he pleaded guilty. Granting relief on his claims would necessarily imply the invalidity of his guilty plea for disorderly conduct with a modifier for domestic abuse and use of a dangerous weapon. Scharon claims that that he only pled guilty because he was "overmedicated," but if that is in fact true, he must seek to withdraw his plea and have his conviction vacated before he can proceed with his civil rights claims under §1983. So long as his guilty pleas stand, Scharon's claims are likely *Heck* barred.

Finally, the Court cannot provide Scharon with the remainder of the relief he seeks, i.e., "overturing" various decisions in his state court family law, civil, and criminal cases and "dismissing" the cases with prejudice. A federal district court does not have original jurisdiction to "overturn" any decisions in state court or "dismiss" any cases. Review of state court decisions by lower federal courts, other than under 28 U.S.C. §2254, is barred by the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) ("Simply put, the *Rooker–Feldman* doctrine precludes lower federal court jurisdiction over claims seeking review of state court judgments because no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment."). If Scharon believes that the Wisconsin trial courts made an error in any of his state court cases, his remedy is to file an appeal with the Wisconsin Court of Appeals. This Court cannot interfere with his state court proceedings.

For all of these reasons, Scharon's claims fail, and his case will be dismissed. The dismissal is with prejudice. *See Boyd v. Bellin*, 835 F. App'x 886, 889 (7th Cir. 2021) (concluding that the district court need not provide opportunities to amend the complaint when amendment would be futile). The federal constitutional claims are dismissed with prejudice for failure to state a claim; the remainder of the claims involving his state court cases are dismissed for lack of subject-matter jurisdiction. *See Frederiksen v. City of Lockport*, 384 F.3d 437, 438-39 (7th Cir. 2004).

**IT IS THEREFORE ORDERED** that Scharon's motion to waive the initial partial filing fee (Dkt. No. 7) is **GRANTED**.

**IT IS FURTHER ORDERED** that Scharon's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim and lack of jurisdiction.

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the **$350.00** balance of the filing fee by collecting monthly payments from Scharon's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Scharon is transferred to another institution, the transferring institution shall forward a copy of this order along with Scharon's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

Dated at Green Bay, Wisconsin this __21st__ day of September, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

---

Case 1:21-cv-00895-WCG   Filed 09/22/21   Page 11 of 11   Document 9